35 C.C.P.A. (Patents)

### In re HAUSER et al.
### Patent Appeals No. 5481.

Court of Customs and Patent Appeals.

Feb. 10, 1948.

Mason, Fenwick & Lawrence, of Washington, D. C. (Henry S. Morton, of Washington, D. C., of counsel), for appellants.

W. W. Cochran, of Washington, D. C. (J. Schimmel, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Presiding Judge, and HATFIELD and JACKSON, Associate Judges.

JACKSON, Associate Judge.

This appeal brings before us for review a decision of the Board of Appeals of the United States Patent Office affirming a decision of the Primary Examiner rejecting all of the claims, 4, 5, and 6, of appellants' patent application, serial No. 463,838, filed October 29, 1942, for "Fortified Filled Milk Product" as unpatentable over the prior art and as indefinite.

The references relied on are: Stevens 1,432,632 October 17, 1922; Musher 1,816,339 July 28 1931; Hooper 2,030,792 February 11, 1936.

During the oral argument here, counsel for appellants moved to dismiss the appeal as to claim 4. The motion will be granted.

Claims 5 and 6 read as follows:

"5. A palatable filled milk product with high content of vitamins A and D, consisting of an emulsion of skim milk, vegetable oil and fish oil concentrate of vitamins A and D, except such constituents of the fish oil concentrate which produce fishy taste and odor.

"6. A palatable filled milk product comprising an emulsion of skim milk, vegetable oil and fish oil concentrate of vitamins A and D, from which those constituents of the fish oil which produce fishy taste and odor have been removed by introducing a relatively small amount of fish oil concentrate into a relatively large body of emul-

sified skim milk and vegetable oil, while boiling violently under high vacuum at a temperature at which the vitamins remain intact whereby the fish oil is spread over an extensive surface and the fishy taste and odor producing constituents volatilized and drawn off."

The application relates to what is called a filled milk product. Filled milk is said to be skimmed milk to which has been added vegetable oil, such as coconut, cottonseed, or peanut oil, in an amount sufficient to take the place of the butter fat which was removed from whole milk in the production of skimmed milk. The filled milk is said to provide a well balanced food product.

The filled milk product, as above described, in emulsion form, according to appellants' specification, has added to it fish oil concentrate, such as cod-liver oil to provide the vitamin A and D, thereby making the product equivalent in vitamin content to whole milk. The fish oil in quantity and time is added as is described in claim 6.

The Stevens reference relates to the production of a milk food product and discloses the replacing of the butter fat of whole milk with a vegetable oil, such as refined coconut oil. The mixture of skimmed milk and vegetable oil is subjected to the action of live steam so that there results a complete emulsification of the oil and milk.

The patent to Musher discloses a food product of skimmed milk and olive oil which after emulsification has added to it egg yolk or cod-liver oil, thereby increasing the vitamin D content for the purpose of giving the product a high antirachitic vitamin content.

The Hooper patent is for the production of a solution of vitamins A and D in propanediols, readily miscible with water, milk, or fruit juices. It discloses a method in which a vitamin A and D preparation is produced from cod-liver oil saponified with alkali and extracted by means of an organic solvent. The preparation is gently heated to about 40° C., with the exclusion of air, by means of an inert gas, such as carbon-dioxide for two hours. The mixture is then cooled and centrifuged and the resulting clear solution contains what are called the lipoid-soluble vitamins and is stable and of high antirachitic content. The clear solution when mixed with water or milk is said to yield a very finely dispersed suspension of colloidal solution.

The Primary Examiner rejected the claims as lacking invention over the Stevens patent or the Musher patent in view of the patent to Hooper. He further rejected the claims as indefinite. He pointed out that the Musher reference discloses the substitution of olive oil for the butter fat that had been separated from whole milk, and also the addition of vitamin D in different forms to increase the vitamin content of the product. The examiner stated that apparently the vitamin would be added in standardized amounts. He further noted that the Hooper patent discloses the preparation of milk products with standardized amounts of vitamins.

In his rejection of the claims as lacking invention over the patent of Stevens in view of that of Hooper, the examiner stated that the former discloses the substitution of coconut oil for the butter fat in milk and that the emulsification and the hemogenation of materials with the addition of vitamins are shown in the Hooper patent. He stated that it is obvious to add vitamins to any food product, but that such addition merely produces an expected result.

The board affirmed the examiner's rejection on the prior art, but did not deem it necessary to discuss the question of indefiniteness. However, the general affirmance of the decision of the examiner presents that question here.

It is conceded by appellants that filled milk consisting of the ingredients set out in the claims is old and they also concede that it would not involve invention to substitute the fish oil concentrate of the claims for the cod-liver oil disclosed in the Musher patent. Therefore, it appears that appellants' contention of novelty must reside in the expressions "except such constituents of the fish oil concentrate which produce fishy taste and odor", in claim 5, and "those constituents of the fish oil which produce fishy taste and odor have been removed" in claim 6.

We are of opinion that the board correctly described the product of appellants as essentially comprising skim milk, vegetable oil and vitamins A and D. The fish oil is utilized only because it contains those vitamins. In other words it may be considered as a carrier of them. The patent to Musher shows the use of egg yolk or egg yolk oil for the addition of vitamin D to the product and also a small percentage of cod-liver oil, which it is conceded could be substituted for appellants' fish oil concentrate without involving invention. Therefore, we are unable to see any substantial difference between the product of appellants and that of the Musher patent. In that respect the board stated: "The fish oil is not disclosed to have any effect upon the final product other than as a carrier for the vitamins during the process of manufacture. If Musher used egg yolk as his source of vitamins, the product would apparently not differ from the claimed product in any material respect since it would not have a fishy taste or odor."

The board further observed that: "It is not clear from either the specification or claims how much, if any, of the fish oil as distinguished from the vitamins remains in the product after removal of the fishy taste and odor. It may be that the oil is entirely removed or remains in such infinitesimal quantity as not to affect the taste and odor of the final product."

Appellants do not rely wholly upon fish oil concentrates to furnish vitamins A and D to their product. That is merely their preferred form. The specification in so stating also discloses the use of "a concentrate from warm blooded animals or carotine." There is nothing set out in the specification as to the reason that fish oil concentrates are preferred to the other named substances, but in appellants' brief it is said that fish oil contains more of the two vitamins than most other concentrates and that it is cheap and more abundant.

Appellants contend that whether or not the fish oil has any effect on the product is not material for the reason "that it is there." That contention we do not think is well taken. Since the final product contains, not fish oil, but only the unsaponifiable constituents thereof, it would appear,

as stated by the solicitor in his brief, that the fish oil is only the source from which the vitamins are obtained.

We are convinced that it is immaterial as to whether or not the filled milk product has added to it vitamins originating in either fish oil or egg yolks as far as patentability is concerned. Surely the product of the Musher patent, using egg yolk as the vitamin source, cannot be patentably distinguished from the product defined in the rejected claims.

Since we are in agreement with the board in its reasoning, as herein stated, it is unnecessary to discuss the rejection of the claims on the Stevens patent in view of the patent to Hooper or to consider the rejection on indefiniteness.

The appeal as to claim 4 is dismissed, and the decision of the Board of Appeals with respect to claims 5 and 6 is affirmed.

Affirmed.

By reason of illness, O'CONNELL, Judge, was not present at the argument of this case and did not participate in the decision.